## ABIJAH RICHARDSON & wife *vs.* CITY OF CAMBRIDGE.

A deed of mortgage which conveys all of the land and right and claim to land which the grantor now has in the town of C. does not include land therein to which he has only a possibility of a reversion, on the non-performance of a condition subsequent.

If there is no evidence of the time when a note secured by mortgage of real estate was paid, but the note is found among the mortgagor's papers after his death, the presumption is that it was paid according to its terms, and the estate of the mortgagee is defeated thereby; and if, after the death of the mortgagor and mortgagee, a suit to redeem the mortgage has been brought by the heirs of the mortgagor against the heirs of the mortgagee, in ignorance of the facts, and, upon the finding of the note, a settlement is made by which the note is given up to the latter, this act is not effectual to revive the mortgage.

Proceedings under a petition for partition, in which the petitioner alleges that a certain share of the premises is owned by persons therein described, who in fact are not the owners thereof, and in which partition is made according to the allegations of the petition, do not prevent him from subsequently purchasing such share from the true owner, and making a valid conveyance thereof.

PETITION for partition of land originally owned by Rufus Davenport and others as tenants in common, being a part of the estate known as the old meeting-house lot in Cambridgeport. The petitioners claimed title to $\frac{55}{100}$ of the premises, being the

portion formerly owned by Davenport, as heirs at law of Newell Bent, deceased, and the respondents claimed title to the whole estate by sundry mesne conveyances from the heirs of Davenport, and the other original owners. In 1837, William Fisk and Aaron Rice, who then owned $\frac{31}{100}$ of the premises, filed a petition for partition thereof against Josiah Mason, who owned $\frac{14}{100}$, and the heirs of Bent, who were described as owners of $\frac{55}{100}$. Notice was accepted by the respondents, and the shares of Fisk and Rice and of Mason were set off to them respectively, and are now conceded to be owned by the respondents. In 1845, the heirs of Davenport conveyed all their interest in the premises to Fisk, who, in 1857, conveyed the same to the respondents. The case was heard in this court at April term 1860, before *Bigelow*, J., and by consent of parties reported for the determination of the whole court. The other material facts sufficiently appear in the opinion.

*W L. Burt*, for the petitioners.

*J. C. Dodge*, for the respondents.

CHAPMAN, J. The lot described in the petition is known as the meeting-house lot. It is about seventeen rods in length and eight rods in breadth, and is bounded by several streets in Cambridge. The petitioners are the heirs of Newell Bent, late of Cambridge, deceased, and claim under a mortgage deed, made to him by Rufus Davenport, dated November 1st 1827, which they say includes this lot. The condition of the mortgage is that, if the grantor, his heirs, &c., shall pay to the grantee, his heirs, &c., a note of $6000 on demand with interest, the deed and note shall both be void. The property mortgaged includes many particulars. The deed describes a great number of tracts of land by reference to other deeds. It also includes all the grantor's pews in the meeting-house then standing on the lot, which are designated by their numbers. If the meeting-house lot is included in the mortgage, it is by the following clause:

" And I the said Rufus Davenport do hereby give, grant, sell and convey unto the said Newell Bent, his heirs and assigns, all (except as hereinafter excepted) of the land and right and claim to land which I the said Rufus now have in the towns of

Cambridge and Charlestown, in the said county of Middlesex, and of the pews and right and claim to pews, in the said Cambridgeport meeting-house, including all right to redeem such land and pews, and all privileges and appurtenances thereunto belonging, whether the same be or be not included in the deeds and numbers of pews referred to or described in this deed. The premises being subject to a number of previous mortgages, I the said Rufus make no warranty hereby against incumbrances on the premises."

The first question to be considered is whether this clause includes the meeting-house lot.

The title to the lot was then in the Cambridgeport Parish, under a deed from the Cambridgeport Meeting-house Corporation, dated February 18, 1809. The grantors held it under the deed of Rufus Davenport to Royal Makepeace and four other persons, dated April 26, 1806. These parties held it under a deed from Andrew Boardman and others, dated April 15, 1806. Boardman's deed recites that whereas he had previously sold certain lands to Davenport, and certain other lands to Makepeace, and had covenanted with them that he would lay out a square or piece of land for a meeting-house lot, he therefore conveys this lot to these grantees, their heirs and assigns, to hold in certain proportions in common, with warranty. The deed of Davenport, Makepeace, and their associates, is in consideration of friendship and good will to the Cambridgeport Meeting-house Corporation, and conveys the lot to the corporation, its successors and assigns, " on the conditions and for the purposes hereafter mentioned, and no other. The said corporation shall have a right to keep and continue a meeting-house thereon, where the one now building stands," &c. Assuming that this conveyance was conditional, it was on a condition subsequent; and, when the condition should be broken, it would give the grantors a right of entry for the breach. At the time of Davenport's mortgage to Bent, the condition had not been broken. The grantees of the corporation had a meeting-house upon it, which was the same house that contained the pews mentioned in the mortgage. The house remained, and was used for religious worship till

1833. The interest which Davenport then had in the lot was a mere possibility of reversion, as to his individual share. If any of the words of the clause above cited include this interest, they are the following : " All the right and claim to land which I the said Rufus now have in the towns of Cambridge and Charlestown." The following words of the clause, viz. : " including all right to redeem such land and pews," refer to such land and pews as were covered by mortgages, and this lot was not in that situation. At that time he had no right or claim to this land; and it was not certain that he ever would have any. Therefore the words, " all the right and claim to land which I now have," do not include this land by their fair and natural import. They have a more limited meaning than the usual phrase which is adopted for the purpose of conveying all rights of every description, namely, " all my right, title and interest in and to," &c. As this was a mortgage, the object of which was to secure a note payable on demand, there is less reason for giving the words an enlarged construction than if it had been an absolute deed, the apparent object of which was to transfer all his interest in any and all real estate situated in the towns named. Regarding, then, the words of the mortgage as not broad enough to convey a possibility of a future right of entry for forfeiture, the petition must fail on this ground.

But if the mortgage had included this lot, there is another fact which is fatal to the petitioners' claim. It does not appear when or how the note was paid; but after the death of the mortgagor, it was found among his papers. The presumption arising out of this fact is that it was paid according to its terms ; that is, that it was paid when demanded. If it was so paid, the estate of the mortgagee thereupon expired by its own terms, and the mortgagor was in of his old estate. No release of the mortgage was necessary, and no equity of redemption existed. *Holman* v. *Bailey*, 3 Met. 55.

It appears that after the decease of Davenport and Bent a suit was brought by the heirs of Davenport against the heirs of Bent to redeem ; but upon the note being found among the papers of Davenport, a settlement was made by which the heirs

of Bent were to take all the mortgaged property except the meeting-house lot, and pay the heirs of Davenport the sum of $6000. Newell Bent the younger and Joseph Porter and wife, the wife being a sister of Bent the younger,) made a quitclaim of the meeting-house lot to Henry Davenport, the son of Rufus, dated February 23, 1844. A release by the minor heirs of Bent was talked of, but it was not considered necessary. Davenport's heirs released the other lands to Bent's heirs, and, to strengthen the title, or to revive a title under the mortgage, the $6000 note was given to Bent's heirs. As it was a part of the agreement that Bent's heirs should not have the meeting-house lot, the petitioners are without equity. Nor would they gain any legal title by virtue of the return of the note to them. This act would not revive the mortgage, which had been extinguished in the lifetime of the mortgagor.

The petitioners also claim under a deed from John Tarbell, a deputy sheriff, by which, in January 1828, he conveyed to Newell Bent all Davenport's right in equity of redeeming the real estate described in the mortgage above referred to; but of this they cannot avail themselves: first, because it did not include the meeting-house lot; and secondly, because there does not appear to have been any existing equity of redemption when the deed was made. And if there was such an equity existing at the time, Bent suffered the mortgage to be discharged by giving up the note, and did not in his lifetime assert any right to such equity. There is no occasion, therefore, to consider the objections to the sale of Tarbell on account of formal defects.

The proceedings upon the petition for partition in 1837 did not bind the heirs of Davenport, because they were not parties, and had no opportunity to become parties. Fisk and Rice were the petitioners, and Mason and the heirs of Newell Bent were the respondents. And though the judgment was conclusive as to all the then existing rights of the parties, by Rev. Sts. c. 103, § 33, yet it did not operate as a warranty upon rights to be acquired afterwards. The language of the statute refers only to the present rights of parties as being concluded. If there were better titles outstanding in third persons, they were unaffected

by the proceedings. The arrangement was afterwards made by which the heirs of Davenport were to give up the $6000 note to the heirs of Bent, and execute the quitclaim deed of all the mortgaged property except the meeting-house lot. This quitclaim is dated December 9, 1843, and the quitclaim of Bent the younger and Porter and wife to the meeting-house lot is dated February 23, 1844. Since that arrangement was made there has been no adverse possession of the meeting-house lot by any of Bent's heirs; and the title of Davenport's heirs might well be conveyed to Fisk, and by him to the respondents. Thus it appears that the petitioners have not acquired title by estoppel or by adverse possession. They have therefore failed to establish any title to any portion of the premises.

*Judgment for respondents.*